CASE 44—PETITION EQUITY—FEBRUARY 14.

## Phelps, &c., v. Jones.

APPEAL FROM BUTLER CIRCUIT COURT.

1. NOTICE BY A PURCHASER AT EXECUTION SALE OF A MOTION FOR THE POSSESSION OF THE LAND is sufficient if it conforms to section 9 of article 12, chapter 38, of the General Statutes, as amended by the act of March 23, 1882.

2. THE STATUTE REQUIRING SPECIAL COMMISSIONERS TO BE SWORN AND TO EXECUTE BOND before entering upon the discharge of their duties applies in all cases where a special commissioner is appointed to sell

property, whether he is selected by the parties or by the court. But whether the failure of the special commissioner to take the oath and execute the bond required by the statute is ground for setting aside the sale is not determined.

3. POWER OF SPECIAL COMMISSIONER TO SWEAR APPRAISERS —Conceding that a special commissioner, when properly qualified, can swear the appraisers, he certainly can not do so if he himself has not qualified. And although the commissioner in this case, by an amended report, says he, as examiner, swore the appraisers, this statement will not be allowed to control, as it is in conflict with the appraisements as well as with the original report.

4. A SALE UNDER DECREE FOR DEBT WILL BE SET ASIDE IN THE ABSENCE OF A VALID APPRAISEMENT, and there can not be a valid appraisement unless the appraisers were sworn by an officer authorized to administer the oath.

B. L. D. GUFFY FOR APPELLANTS.

1. Until a special commissioner takes oath and gives bond he has no more authority to make sale than any private person not named in the judgment. (Gen. Stats., chap. 75, art. 2, secs. 10-12; Constitution of Kentucky, art. 8, sec. 1.)

2. Even if the special commissioner has power to make the sale before he qualifies as required by the statute, he certainly has no power to administer an oath to the appraisers until he himself has been sworn.

3. It was the duty of the commissioner to announce that a party could bid the debt against each tract for a less number of acres than the whole tract. (Haney v. McClure, 10 Ky. Law Rep., 911.)

P. F. EDWARDS FOR APPELLEE.

While there may have been some irregularities on the part of the commissioner in making the sale, none of them were prejudicial to appellants.

W. A. HELM ON SAME SIDE.

Brief not in record.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

About the year 1883 a piece of town property, and also two other lots of land, containing four and fifteen acres respectively, belonging to the appellant J. N. Phelps, were sold under execution, and bid in by the appellee, J. A. Jones, at much less than their

appraised value. The sale of the town property was made subject to a mortgage to one Smith, of which the appellee subsequently became the owner. Phelps remained in possession of the property, and in 1887 the appellee, having obtained a sheriff's deed for the fifteen-acre tract, instituted a proceeding by notice under section 9, article 12, chapter 38, of the General Statutes, to obtain possession of it.

A demurrer was filed to the notice, and it is contended that, according to the cases of Bunnell, &c., v. Thompson, 12 Bush, 116, and Sharpe v. Roe, &c., 13 Bush, 461, it should have been sustained, because it did not refer to any judgment, or state that the land had not been redeemed, or was not subject to redemption, or that the purchaser had obtained a conveyance. These cases were, however, decided before the Legislature, by the act of March 23, 1882, amended the statute upon which this proceeding is based, and prescribed the form of the notice to be given in such a case, and which this court upheld in the case of McGee v. Sutherland, 84 Ky., 198.

The notice in this case conformed to the statute, and the demurrer was, therefore, properly overruled.

The appellee also, in 1887, brought an action in equity, setting up that Phelps had a title of record to but a part of the four acres of land; that as to the balance, he had an unrecorded deed, and praying that he be compelled to convey the land to him by virtue of his execution purchase; or, if this could not be done, that then his lien for the amount at which he had purchased it under execution be enforced, and the land sold to pay it. Unquestionably he had such

a lien, provided the amount so paid by him had not, in some way, been settled.

The appellee, in the same year, brought a third action to enforce a lien against the town property for his Smith mortgage debt and the amount at which he had bid it in at the execution sale. The three suits were consolidated. The appellant Phelps claimed that the appellee bid in all the property at the execution sale for him under an agreement between them that he might at any time redeem it by the repayment of the purchase money.

The appellee admits, in his pleadings, that he bought it at the request of the appellant Phelps, but that the latter only had the privilege of retaining it by paying the sale bonds which the appellee had executed. The appellant Phelps contends that at the time of the sale the appellee owed him several thousand dollars, and that in this way the land was redeemed.

Pending these suits the appellant Phelps claimed to have transferred the right to all the property, for value, to the appellant Priscilla Jones, who lived with him, and she asserted her claim. The appellant Phelps and the appellee had theretofore had many transactions. The claim of indebtness by the appellee to the appellant Phelps was in the form of an open account. It was all denied, and the evidence does not sustain it. The appellant Phelps in his own deposition says, substantially, that he can not say that any portion of it is correct. He is quite old, and this may arise from bad memory, but if so it is his misfortune. It is proven that subsequent to the date of all the items they had a settlement, which appellee testifies did not include the

Smith mortgage debt, or what he had paid for the
lands, and that Phelps fell in debt to him in the sum
of five hundred and sixty-three dollars and sixty-two
cents, for which he executed a note to the appellee,
which is exhibited, and shows it was given on settle-
ment.    The appellant Phelps' statement is inconsis-
tent.    At one time he maintains that he was to have the
land whenever he repaid the appellee his money, and at
another he says that the appellee was really paid when
the sale was made by reason of a large indebtedness
from him to the appellant.

The lower court rendered a judgment for the appellee
for his Smith debt and what he had paid out under the
execution sales, with interest; directed a lien to be en-
forced therefor against the property, and this disposi-
tion of the merits of the case was correct.

The property having been sold under the decree
and purchased by the appellee, the appellants filed
exceptions to the report of sale.    They claim that
the sale was not advertised as directed by the judg-
ment; that the property was not appraised before the
sale; that no opportunity was offered any one to take
a less quantity of it and pay the debt, and that the
special commissioner who made the sale had not qual-
ified by taking the oath and giving bond for the proper
performance of his duties.

It is unnecessary to consider all the objections to
the sale.    No evidence was offered as to them by
either side.    The special commissioner who made the
sale does not appear to have taken any oath or given
any bond for the proper performance of his duties.
The statute provides:

"§ 10. The parties, or their attorneys, may be permitted by the court to select a receiver or commissioner in any action or proceeding to perform the duties of the master commissioner.

"§ 11. Before acting, such receiver or commissioner shall be sworn, and execute bond, with surety, in the same manner and the same in substance as is required of a master commissioner.

"§ 13. Their bonds must be to the Commonwealth, and they may be put in action the same as the bonds of the master commissioner." (General Statutes, page 941.)

The wording of these sections make them apply where the special commissioner is selected by the parties or their attorneys, but yet the court appoints him. In this case it only appears that the court appointed the special commissioner. Why it was done is not shown. There is no other statutory provision relating to the qualification of special commissioners, and in our opinion it was intended to apply to all cases where they are appointed to make sales of property. The act of the Legislature of January 12, 1878, evidently does not apply to such cases. It is unnecessary to consider, however, whether the mere fact that a special commissioner did not take the proper oath and give bond would or would not be ground to set aside a sale.

The act of the Legislature of April 9, 1878, giving the same right to a debtor to redeem his land sold under decree as when sold under execution, provides that before its sale "the commissioner or officer, whose duty it may be to sell the same, should cause it to

be valued, *under oath*, by two disinterested, intelligent housekeepers of the county not related to either party." (General Statutes, page 835.)

The original report of the commissioner is signed by him as such officer, and says that the appraisers were sworn by him. Conceding that a special commissioner, when properly qualified, could swear the appraisers, yet he certainly can not do so if he himself has not qualified; and unless sworn they can not make a valid appraisement, and it is a necessary condition to a sale.

It is true in this case the commissioner, by an amended report, says he, as an examiner, swore them; but this is in conflict with the original report, and while the amendment would control in the absence of any other showing, yet the appraisements show that the appraisers were sworn by the person acting as commissioner. They are so certified by him. Under this state of case we can not presume from the mere statement in the amended report that the appraisers were sworn by him as an examiner.

At the execution sales in 1883 the total appraisement of the property was one thousand eight hundred and fifty dollars. The valuation at the commissioner's sale was nine hundred and fifty dollars, and the property realized but six hundred and sixty-five dollars. Under these circumstances we are unwilling to presume that the debtor has not been prejudiced by the sale, the validity of which is now in question, and the judgment confirming it is reversed, with directions to set it aside, and if the judgment be not satisfied, order another sale. Before so doing, if there be any money

on hand arising from the receivership over the property, credit should be given for it.

The other judgments appealed from are affirmed, and cause remanded for further proceedings consistent with this opinion.