## APRIL TERM, 1910.

CASE 87.—PROCEEDING BY T. A. PEDLEY, RECEIVER OF
THE OWENSBORO SAVINGS BANK & TRUST
COMPANY FOR A RULE AGAINST J. M. VAUGHN
TO SHOW CAUSE WHY HE SHOULD NOT COMPLY
WITH HIS PURCHASE OF PROPERTY, SOLD BY
THE RECEIVER.—April 13, 1910.

### Vaughn v. Pedley

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Rule awarded and defendant appeals.—Reversed.

Insolvency—Administration of Estate—Sale of Property—Appraisement.—A receiver of the property of an insolvent bank was ordered to sell its banking house and the furniture and fixtures therein. The order did not require an appraisal, but the receiver caused it to be appraised and the appraiser fixed the value at a lump sum for the building, the ground, and the furniture and fixtures in the building, and the property was sold for a lump sum. Held, that the real property should have been appraised as a right of redemption existed as to such property, but appraisal was unnecessary as to the personal property, and that the real estate should have been appraised separately in order to preserve the right of redemption, and that such irregular appraisement vitiated the sale.

W. T. ELLIS and C. M. FINN for appellant.

R. S. TODD and R. A. MILLER for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

The Owensboro Savings Bank & Trust Company having been placed in liquidation in an action brought for that purpose by the Secretary of State on the

ground that the institution had become insolvent and allowed its capital to become impaired, appellee, Pedley, was appointed receiver of its property. He brought suit in the Daviess Circuit Court to settle the trust, and incidentally to marshal its assets and debts, sell its tangible property, and for the adjustment of certain priorities not now involved. Among the property which came to the receiver's possession, and for the sale of which he asked, was a three-story bank building and lot in Owensboro, "and all the furniture and fixtures therein and thereto belonging." An interlocutory decree was entered in the case directing the receiver to sell publicly the property so described. It was advertised as directed by the judgment, and sold at the time and place advertised, when appellant, J. M. Vaughn, became the purchaser at the bid of $29,800. The purchaser refused to execute bonds for the purchase price. A rule was issued against him to show cause why he should not comply with his purchase. In his response, which was treated as his exceptions to the sale, he resisted the rule on several grounds. We do not find it necessary to consider but one of them. The judgment of the sale, in describing the property to be sold, reads: "The said property so ordered to be sold is a three-story banking house of the said Owensboro Savings Bank & Trust Company, and all the furniture and fixtures therein and thereto belonging, and the lot or parcel of land whereon said banking building is located, situated on the northwest corner of Second and Allen streets, in the city of Owensboro, Kentucky, fronting forty (40) feet on the north side of said Second street, and extending back northwardly same width one hundred and fifty-three (153) feet to an alley."

The judgment did not specifically require an appraisal of the property. However, the receiver caused it to be appraised before the sale by two disinterested citizens and housekeepers of Daviess county. The appraisement of the property sold was fixed at $45,000. The appraiser's report thus describes the property valued, which is the same sold by the receiver: "The banking building of the Owensboro Savings Bank & Trust Company, and the lot or parcel of land whereon same is located, situated on the northwest corner of Second and Allen streets, in the city of Owensboro, Ky., fronting 40 feet on the north side of said Second street, and extending back northwardly same width 153 feet to an alley, and all the funiture and fixtures in the said building and thereto belonging, consisting of 3 wall desks, 4 bookkeepers' high chairs, 1 umbrella stand, 1 table and 12 chairs in directors' room, all permanent counters, railing, and cupboards, all electric fixtures, 1 steel vault, and 350 lock boxes in same, and 1 two-section burglar proof safe, and 2 vaults in the basement." At the time of the judgment, as well as of the advertisement and sale, there was contained in the building and "belonging thereto" certain other articles of furniture, particularly one roll-top desk, one revolving office chair, one office chair, one Burroughs' adding machine, one typewriter desk and machine, two flat-top desks, three filing cabinets, one set Century Dictionary, one protectograph, one vault book wagon, two clocks, eleven pictures in frames, one water cooler and two settees. The value of these articles was from $600 to $750. It is conceded that they had been used by the bank in its banking business, in connection with the other articles mentioned which were included in the sale. The receiver reserved the articles

not sold for his own official use, and for future sale.
It may be conceded that, where the decree is silent
as to the manner of selling such articles, the re-
ceiver is authorized to exercise his own discretion
whether they will be offered in separate pieces, or
in lots, or as a whole. Nor is there anything here to
indicate that the receiver abused a sound discretion
in offering the property as he did. That appellant
believed he was buying all the property—that ex-
cluded as well as included—there is no doubt. But
we do not go into a consideration of the effect of his
mistake, resting our decision upon another point.

From the foregoing it will be noted that the prop-
erty ordered to be sold was of two kinds: One real;
the other personal. Some of that described in the
receiver's report and in the appraisement as person-
al property was in fact real property. While other
articles described may or may not have been
so attached to the realty as to become real
property, other articles included were clearly
personalty. Therefore, we find the appraisal
included both real and personal property in
the gross valuation of $45,000, and did not
distinguish between the two kinds so as that the
valuation of the real property alone was stated. Nor
do we know that it was attempted to be valued sepa-
rately. From the description of the articles of
property, meager as it is, it is easily inferable that
it might have had a considerable value, which, when
subtracted from the total valuation, would have left
the valuation of the real property at much less than
$45,000. If it had been so separated and the bids
had been likewise upon the separate kinds, it may
have been that the real property would have brought
more than two-thirds of its appraised value, even at

appellant's gross bid, and therefore not subject to redemption. Whether the personal property brought more than two-thirds of its appraised value is immaterial, as that class of property is not subject to redemption, nor required to be appraised. The effect is the real property was not appraised at all. In Vallandingham v. Worthington, 85 Ky. 83, 2 S. W. 772, 8 Ky. Law Rep. 707, it was held that the valuation by the appraisers of the wrong piece of land, under a mistake, would operate to set aside the sale. In Lawrence v. Edelen, 6 Bush, 55, it was said that, if an incorrect valuation occurred from a mistake other than the mere judgment of the appraisers, the sale would be set aside. In Phelps v. Jones, 91 Ky. 244, 15 S. W. 668, 12 Ky. Law Rep. 818, it was held that, in the absence of a valid appraisement of land sold for debt, the sale would be set aside. Graves, etc., v. Long, Assignee, 87 Ky. 441, 9 S. W. 297, 10 Ky. Law Rep. 414, was a case where lands of a debtor assigned for the payment of debts were sold under a decree without an appraisement. The sale was set aside on the ground that the failure to appraise was an error available to the assignee of the debtor, and that for such failure the sale was erroneous. The receiver in this instance stands in the same legal relation to the debtor bank and its creditors as an assignee under a general deed of assignment would. He would have the right to redeem the real property if it sold for less than two-thirds of its appraised value, and whether, redeeming it or not, he would have the right to occupy it, and to receive the rents until the right of redemption expired. The record shows that this property had a rental value of about $3,000 a year. Upon the facts and under the authorities, we conclude: It was necessary to a

valid sale of the real property that it be appraised before the sale; that appraising it in connection with personal property included in the sale was not an appraisement at all; that the failure to appraise was irregular and vitiated the sale; and that this situation appearing the chancellor erred in requiring the purchaser to comply with the terms of the sale.

Judgment reversed and remanded for proceedings consistent herewith.