## Stark v. Petty Brothers.

(Decided June 23, 1922.)

## Appeal from Allen Circuit Court.

1. Mechanics'· Liens—Improvements—Enhanced Value.—The appellant, by representating to the appellees that he had sold and assigned to the Arrowhead Oil Company an oil lease on 100 acres of land, and advising them to contract with that company to that end, induced the appellees to enter into a written contract with the Arrowhead Oil Company to drill for it on the leasehold mentioned an oil well at the agreed price of $3.00 per foot and $25.00 per day by way of compensation for such delay in the drilling as might result by fault of the oil company; and, after having drilled the well to a depth of 222 feet, the appelless were stopped from further work thereon by the oil company's abandonment of the lease and restoration of the leased premises to the appellant, without compensating appellees for the drilling they had done on the well or for the delay in such drilling caused by its fault. Held, that the appellant was estopped by the foregoing facts from resisting the enforcement by the appellees of a lien, previously filed and perfected under sec. 2464, Ky. Statutes, upon the property and property rights covered by the appellant's lease, for what was due them for the well drilling they did under their contract with the Arrowhead Oil Company, to the extent that the actual value of the property was enhanced by the improvement thereof resulting from the drilling performed by them on the well.

2. Estoppel—Equitable Estoppel.—The doctrine of equitable estoppel extends to real and personal estate, and is bottomed on the theory that a person who has induced another to believe and act in a certain manner will not afterwards be permitted to injure or prejudice in his rights such person, because of the acts done under the belief that they were consented to. And where one or two persons must suffer by the act of a third the one who enabled the third person to occasion the loss must sustain it.

3. Mechanics' Liens—Improvements—Enhanced Value.—As the lien allowed the appellees by sec. 2464, Ky. Stats., is enforceable only to the extent that the well drilling done by them enhanced the actual value of the lease and property thereby included, the action of the circuit court in adjudging its enforcement as to the $500.00 of their demand claimed for the twenty days they were compelled by the Arrowhead Oil Company's fault to discontinue drilling, must be held reversible error. No increase in the value of the property could have resulted from appellees' discontinuance of the drilling of the well. The provision of their contract with the oil company making the latter responsible to them for such loss of time is a

penalty enforceable only as between the parties themselvs. The statute allows no lien for it.

GAINES & GARDNER for appellant.

HARPER & DENTON for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This action was brought by the appellees, Petty Brothers, a partnership composed of L. M. and W. P. Petty, engaged in the drilling of oil and gas wells, seeking to recover of the Arrowhead Oil Company, a corporation created under the laws of New Jersey, $1,166.00 by the enforcement of a mechanics' lien upon a certain lease and leasehold embracing 100 acres of land in Allen county described in the petition, that sum being, as alleged, due and owing to them by the Arrowhead Oil Company upon a written contract for the drilling of an oil well on the 100-acre tract of land mentioned, which the appellees by the terms of the contract referred to and for the consideration therein specified, undertook to drill and did partially drill for it. The appellant, J. Dan Stark, of whom, as further alleged, the Arrowhead Oil Company acquired the lease in question, was made a defendant to the action because of his setting up of a claim to the leased premises.

Respecting the lien asserted on the leasehold, the petition alleged that it was perfected by the filing in the office of the clerk of the Allen county court of the required statement containing the facts necessary under the statute to its assertion, verified by the appellees' affidavit, which was done within six months of the completion by the appellees of the drilling of the oil well. It was further substantially alleged in the petition that appellees entered into the contract with the Arrowhead Oil Company to drill the well in question at the instance of the appellant Stark and were induced to do so, and to do the work of drilling the well as performed by them, upon his representation that he had sold and conveyed the lease and leasehold to that company, which was then the owner of same.

It also appears from other averments of the petition and from the terms of the written contract between appellees and the Arrowhead Oil Company, which was filed with and made a part of the petition, that they were to be paid by that company for the work of drilling the well for it, at the price of $3.00 per foot, and the further sum of

$25.00 per day for all delays (cessation from drilling) caused by it. Appellees, as further alleged, performed its part of the contract by drilling on the leased premises the single well undertaken by the Arrowhead Oil Company to a depth of 222 feet, when they were compelled to, and did, stop work thereon because of the forfeiture or abandonment by the Arrowhead Oil Company of its lease and its failure to pay the appellees the compensation due them for work on the well, or any part thereof, as provided by its contract with them. That the drilling to the depth of 222 feet done by the appellees, at the contract price of $3.00 per foot, amounted to $666.00. In addition by reason of the failure of the Arrowhead Oil Company to provide necessary casing for the well during the progress of appellees' drilling of same, they were compelled to, and did, suspend work thereon twenty days, which at the contract price of $25.00 per day for such delay, amounted to $500.00; this sum, added to the $666.00 for the drilling done by the appellees, making the total of $1,166.00 claimed to be due them and sued for.

The Arrowhead Oil Company made no defense to the action, but Stark did so by filing an answer traversing all averments of the petition affecting him and looking to the enforcement of the lien therein asserted; and in addition alleged, that after appellees ceased to drill the well under their contract with the Arrowhead Oil Company, they continued to drill it under employment by the appellant until oil was produced therefrom, in consideration of which and of the compensation they received from appellant for the drilling they did for him, the appellees released him and relieved the leasehold of any and all liability for their debt against the Arrowhead Oil Company. All affirmative allegations of the answer were controverted by the appellees' reply. After the taking of proof by the parties and the submission of the case, the chancellor rendered judgment, declaring that the appellees had and held a mechanics' lien upon the lease held by the appellant, J. Dan Stark, on the 100-acre tract of land described in the petition and such interest as it created in the land, including the equipment and output of oil from the well drilled by the appellees, as security for the payment of their debt of $1,166.00, sued for, which lien the judgment enforced by directing the sale by the master commissioner of the property described in satisfaction of the debt and the appellees' costs. Stark complains of the judgment and has appealed.

Whatever right the appellees may have had to a lien for the drilling of the well, was conferred by section 2464, Kentucky Statutes. The grounds upon which the judgment was based are not stated therein, but we assume that it adjudged the appellees the lien in question either because of the belief of the chancellor that the Arrowhead Oil Company, when it contracted with the appellees for the drilling of the well on the 100-acre tract of land described in the petition, was the owner, by purchase from the appellant Stark of the lease upon the land, or that Stark by representing to appellees that the Arrowhead Oil Company was at that time the owner of the lease and inducing them to contract with it to drill the well, was estopped to defeat their lien for the drilling done by them under that contract upon the ground of his ownership of the lease and failure to consent in writing to such contract. It is apparent from the record that the appellant Stark had, prior to the making of the contract between the appellees and the Arrowhead Oil Company for the drilling by the former of the well on the leased premises, entered into some sort of contract with the Arrowhead Oil Company with respect to the leasing to that company of the 100-acre tract of land in question. That contract, in form a lease, admittedly was reduced to writing, but it was not filed with the appellant's answer as an exhibit nor was it introduced in evidence, its loss alleged, or its absence accounted for. Whether it is in the possession of the appellant, the named lessor and also owner of a considerable block of stock in the Arrowhead Oil Company, or another, is undisclosed, and, if lost or destroyed, no attempt was made to prove its contents. It is true the appellant's deposition contains a statement to the effect that this lease was held in escrow by an unnamed agent, and because of the failure of the lessee, Arrowhead Oil Company, to pay the appellant some amount of money unnamed, or perform some condition precedent undescribed, the lease never went into effect. But it readily can be seen that this testimony of the appellant is too indefinite to give any information as to the character or terms of the instrument. It does, however, appear from the record that the Arrowhead Oil Company upon, or following, the execution of the writing referred to, was given possession of the leased premises, which possession it held at the time it made with the appellees the contract under which the latter did the well drilling for which they were allowed a recovery in this case. The situation

thus shown is antagonistic to the contention of the appellant that his contract with the Arrowhead Oil Company never became effective, and persuasive of that of the appellees, that the contract was at least an executory one, which by act of the parties to it was rescinded or annulled; and this, if true, would, as provided by section 2464 of the statute, *supra,* cause the lien asserted by appellees to follow the property into the hands of the appellant or other person to whom it went, to the extent only that the actual value of the property was enhanced by its improvement resulting from their drilling of the well under their contract with the Arrowhead Oil Company.

It is, however, unnecessary to speculate as to the theory upon which the circuit court predicated its conclusions expressed by the judgment appealed from. In our opinion the right of appellees to the lien adjudged them may safely be rested on the doctrine of equitable estoppel relied on by them, and the facts justifying its application which seem to be sufficiently pleaded. This doctrine extends to real and personal estate, and is bottomed on the theory that a person who has induced another to believe and act in a certain manner, will not afterwards be permitted to injure or prejudice in his rights such person, because of the acts done under the belief that they were consented to. And where one of two persons must suffer by the act of a third, the one who enabled the third person to occasion the loss must sustain it. Myrick v. Hembree's Admrx., 136 Ky. 110; Trimble v. King, 131 Ky. 1; Begley v. Combs, 32 R. 538; Spears v. Conley, 27 R. 1169; Chenault v. Yates, 156 Ky. 280; Advance Thresher Co. v. Fishback, 157 Ky. 427; Wilson v. Hall, 150 Ky. 663; Arnyx, etc. v. Hurt, 24 R. 291; Wright v. Williams, 25 R. 1337.

It appears from the evidence that before the appellees contracted with the Arrowhead Oil Company to drill the well in question, or met its representative with whom the contract was made, one of them, L. M. Petty, called up by telephone the appellant Stark, the then owner, as he supposed, of the lease in question, and in a telephone conversation with the latter expressed to him the wish of Petty Brothers to undertake by contract the drilling of a well or wells on this leasehold, in reply to which Stark informed him, in substance, that he did not own the lease, but had sold and assigned it to the Arrowhead Oil Company, which would drill it for oil, and advised him to see

the representative of that company at once and contract with it to do the required well drilling on the leasehold. Petty further testified, in substance, that Stark in the telephone conversation assured him of the reliability and solvency of the Arrowhead Oil Company and its representative, but said nothing of there being any conditions in the sale made by him of the lease to that company, its non-compliance with any of which would render the lease ineffective or void. Nor was it then claimed by Stark that the writing evidencing the sale and assignment of the lease by him to the Arrowhead Oil Company was held in escrow by an agent for future delivery upon the performance by the lessee of any condition agreed upon by the parties, or the name of such agent mentioned by Stark. Petty also testified that he believed and relied on the above representations and statements of the appellant Stark, and that he and his partner were induced thereby and the advice of Stark, to enter into the contract with the Arrowhead Oil Company under which they drilled to the depth of 222 feet the oil well developed on the leased premises, which contract they, otherwise, would not have made.

It appears from the record, and was admitted by the appellant Stark, that the writing evidencing his sale and assignment of the lease to the Arrowhead Oil Company was never recorded, and as his representation of the Arrowhead Oil Company ownership of the lease was confirmed by that company, and it was in possession of the land on which the well was drilled when it made with the appellees the contract for the drilling by them of the well, it is not apparent that any inquiry or investigation on the part of the appellees before making the contract would or could have given them any knowledge that the Arrowhead Oil Company was not the owner of the lease.

In giving his testimony the appellant Stark admitted the telephone conversation with L. M. Petty and that he advised him to contract with the Arrowhead Oil Company for the drilling of the well on the leased premises, but denied that he made any statement or representation to Petty to the effect that he had actually sold or assigned to that company the lease in question; and, on the contrary, claimed to have informed him that it had only conditionally purchased the lease, to become effective upon its making payment of a part of the consideration, the writing evidencing the contract being then held in escrow

and not to be delivered to the lessee until such payment was made.

It was shown by evidence in behalf of the appellees, and not denied by the appellant, that after the latter began the drilling of the well under their contract with the Arrowhead Oil Company the appellant made one or more visits to the well, noted the progress being made with the work and manifested great interest therein, and that on none of these visits did he inform the appellees that the contract by which the Arrowhead Oil Company claimed to have leased of him the land containing the well, had never been perfected, or, for any reason, become ineffective.

The fact that appellees completed the well under employment from appellant, and for a consideration paid by him, throws no light upon the questions in issue; nor does the further fact that the appellees, before or at the time of accepting the last employment, demanded of appellant that he pay them for the previous drilling, or his refusal to do so, militate against their right to enforce the lien therefor allowed by the statute. Upon the facts and circumstances presented by the record, we are not authorized to say that the equitable estoppel relied on by the appellees was not established by the weight of the evidence. Hence, the rights of the parties should be determined as if the lease from the appellant to the Arrowhead Oil Company had been an executory contract which, by act of the parties, was rescinded. Therefore, as the appellant was the person to whom the leasehold was returned upon its surrender by the Arrowhead Oil Company after the well drilling contracted for by it was partly performed by the appellees he is estopped to complain that it was by the judgment of the court below subjected to the appellees' lien, as by virtue of the provisions of the statute, *supra,* it followed the property into his hands. In other words, in the state of case here presented, the estoppel must be given the same legal effect that the statute declares shall attend the rescission of an executory leasing contract.

However, as further declared by the statute, *supra,* the lien of the appellees for the drilling of the well performed under their contract with the Arrowhead Oil Company is enforceable "to the extent only that the actual value of the property may be enhanced" by the work of the appellees. A lease on real estate or an interest therein is a *chattel real;* that is, it possesses the elements or char-

acteristics appertaining both to real and personal property, and is a character of property that may be subjected to the payment of a debt or liability of the owner, i. e., the lessee or leaseholder. Therefore, whatever by way of a lasting and needed appurtenant or an increase of productiveness adds to the value of the leasehold is an improvement in the meaning of the statute which enhances its actual value and that of the lease as well. Manifestly, the value of an oil lease depends upon the quantity of oil produced from the land included in the lease, and labor expended by one, employed by the lessee, which results in the development of the leased premises and the production of oil will enhance the value of the lease at least in proportion to the enhanced value actually given the property covered by the lease, considering the purposes for which it may be used under the lease, by the well or wells he may drill thereon. Manifestly a purchaser of the property at a sale thereof to satisfy the appellees' lien debt would only acquire it for the time the lease of the appellant would run and subject to its provisions.

We find in the record no evidence tending to show to what extent the well drilling done by the appellees under their contract with the Arrowhead Oil Company enhanced the actual value of the property covered by the lease, considering the purposes for which its use would be permissible under the appellant's lease; and it seems to us that the testimony of experts in the business of oil production or exploitation should be obtained on that question. The drilling done by the appellees under their contract with the Arrowhead Oil Company did not result in the discovery of oil, but it was found by the drilling which they subsequently did in the same well by employment of the appellant. The oil would not have been produced without the drilling to the depth of 222 feet done by the appellees under the first contract, but it nevertheless required the drilling they did under their contract with appellant to produce it. The first drilling was as necessary as the last, yet there was no evidence whatever as to the proportion in which the first drilling, compared with the second drilling or the drilling as a whole, contributed to whatever enhanced value was given the lease or property covered by it by the resulting improvement. The circuit court, however, adjudged an enforcement of the appellees' lien for the full amount claimed by them. A personal judgment in favor of the appellees against the

Arrowhead Oil Company for the full amount sued for, after service of process on the latter, would have been authorized by the contract between them, but under the statute their lien against the property covered by the lease here involved was good only to the extent that the work appellees performed under their contract with the Arrowhead Oil Company enhanced its value, and this rule the court below should have followed.

We are convinced that the appellees should not have been adjudged a lien or its enforcement for the $25.00 per day, aggregating $500.00, claimed for the twenty days during which they were prevented by the fault of the Arrowhead Oil Company from drilling the well. Obviously, no increase in the value of the lease or property covered by it could have resulted from appellees' discontinuance of the drilling of the well, and the statute allows no lien for it. The provision of the contract between appellees and the Arrowhead Oil Company making the latter responsible to the former for such delay or loss of time, is a penalty enforceable only as between the parties themselves. Under no rule of law or equity known to us can such loss be made a lien against the lease in question or property covered by it.

For the reasons indicated the judgment is reversed and cause remanded to the circuit court with directions to set it aside and enter such judgment as will reject the $500.00 of the appellees' claim for the time they had to discontinue drilling on the well, and allow the lien asserted by them on the lease and property it covers to the extent the well drilling done by them on the leased premises under the contract with the Arrowhead Oil Company contributed to enhance the value of the property, but not to exceed $666.00. And as to this issue the parties, if it be desired, should be permitted to take proof.