## Scottsville Oil Company, et al. v. Dye Brothers, et al.

(Decided May 30, 1924.)

### Appeal from Allen Circuit Court.

1. Estoppel—Owners of Oil and Gas Leases and Mortgagee Held Estopped to Disclaim Lien on Leases as Against Well Driller.—Where owners of oil and gas leases held out to well driller that they had sold their property to a certain corporation, and well drillers entered into contract with such company and drilled wells, and one of landowners during drilling mortgaged its properties to pay debts, owners and mortgagee were estopped to claim that such lands belonged to owners, as against drillers' right to lien thereon; corporation with which they had contracted being a mere bubble.

2. Estoppel—Rule of "Equitable Estoppel."—"Rule of equitable estoppel" is that where one, by his acts, declarations, or silence where it is his duty to speak, has induced another in reliance thereon to enter into a transaction, he shall not impeach transaction to the prejudice of person misled.

3. Estoppel—Owners of Gas Leases Holding Another Out as Owner Estopped to Claim Property Sold by Executory Contract.—Owners of oil and gas leases having allowed corporation to hold itself out as owner of property, having put it in possession thereof, and having held out to well drillers that they had "sold" their property to corporation, are estopped to claim property was sold by executory contract, so that drillers' lien would be limited to enhancement in value of leases under Ky. Stats., section 2464.

SIMS & SIMS for appellants.

HARPER & DENTON for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The judgment of the lower court sustained an attachment sued out by appellees and levied upon the property of the appellants, and to avoid having their property sold,

appellants have appealed to this court and have superseded that judgment.

Appellant, Scottsville Oil Company, is the owner of an oil and gas lease on 166 acres known as "the E. L. Ayers lease," also 171½ acre lease known as "the H. T. Motley lease." Appellant Maury County Oil Company is the owner of an oil and gas lease on 80 acres known as "the B. S. Ayers lease." Appellant Texas Rainbow Oil Company is the owner of an oil and gas lease on 24½ acres known as "the Sallie Faulkner lease." All of the foregoing leaseholds lie in Allen county, Kentucky.

Appellant Moulder Oil Company is the owner of certain oil and gas leases in Warren county, Kentucky, on 46 acres known as "the E. E. West lease," and on 24 acres known as "the Will Evans lease." All of these are Kentucky corporations. Appellant, George E. McKennon, trustee, is the mortgagee of Scottsville Oil Company.

About the first of the year 1921, there came into this field representatives of a Delaware corporation known as the Kosciuszko Oil & Gas Company: The Scottsville Oil Company, Maury County Oil Company, Texas Rainbow Oil Company and Moulder Oil Company, entered into a contract with the Kosciuszko Oil & Gas Company, by which they undertook to sell to it the leases on the six tracts set out above and owned by them, aggregating 502 acres. For some unaccountable reason, it seems that the parties who represented these various companies that were selling to the Kosciuszko Oil & Gas Company were unable or unwilling to state just what consideration was to be paid for these properties. One witness did state that the Scottsville Oil Company was to receive something like $300,000.00 in all, and from an examination of their testimony we are satisfied that the other companies or their officers were to receive sums equally fabulous. It appears that $5,000.00 of this was to be paid in real money and the remainder, as best we can gather from evasive answers made, was to be paid in stock of the Kosciuszko Oil & Gas Company, which stock it agreed and undertook to sell for par within a certain time thereafter, and to enable it to make this sale the stock was to be placed in escrow, to be held until it had sold this stock at the agreed figure. All of these deeds were to be held in escrow, and were not to be delivered until the conditions of the purchase were complied with by the Kosciuszko Oil & Gas Company, and if such conditions were not complied with, the contracts terminated, and the deeds of transfer were to be returned to the respective sellers.

The appellees, Roy Dye and Artie Dye, partners as Dye Brothers, are well drillers and had several rigs for drilling oil and gas wells. On the 30th of March, 1921, Dye Brothers entered into a contract with Kosciuszko Oil & Gas Company to drill for it certain wells on these and other leases, and shortly thereafter began work upon this drilling and within a short time had put down several wells. The Kosciuszko Oil & Gas Company proved to be a bubble and was soon unable to pay for the drilling that the appellees had done and were doing for it. The appellees stopped drilling and filed mechanics' liens upon the various properties upon which it had drilled, for the work done, and also sued out a general order of attachment against the properties of the Kosciuszko Oil & Gas Company, which attachment was levied upon its properties, including properties that it had contracted to acquire from the four appellant corporations. After this drilling was practically all done, but before the attachments were sued out, the Scottsville Oil Company had executed a mortgage, mortgaging all its property to the appellant, Geo. E. McKennon, trustee, to secure the many creditors of the Scottsville Oil Company.

By consent and agreement of the parties, the evidence in this cause was heard orally by the chancellor in open court and the same was ordered to be reported by Fletcher Hollingsworth, official stenographer, and it was agreed that his transcript of this evidence shall be considered as the depositions taken in behalf of plaintiffs and also in behalf of defendants in this case.

The following is a part of the judgment from which appellants appeal:

"This cause being submitted for trial and judgment and the court, after examining the records and hearing the proof and argument of counsel and being sufficiently advised, is of the opinion that the defendants, Scottsville Oil Company, Maury County Oil Company, Texas Rainbow Oil Company and Moulder Oil Company, are each and all estopped from claiming title to the property described in this record and attached herein to the prejudice of the rights of the plaintiff for the reason that the proof showed that said defendants held out to the plaintiff that they had sold their property to the defendant, Kosciuszko Oil & Gas Company, and

"It is the further opinion of the court that the plaintiff is entitled to the relief sought. It is there-

fore the judgment of this court that the plaintiff, Dye Bros., recover of the defendant, Kosciuszko Oil & Gas Co., the sum of $4,488.75, with 6% interest from October 27th, 1921, at which time this suit was filed, and the cost of this action.

"And it is the further judgment of the court that by reason of plaintiff's mechanics' lien it has a lien on the Sallie Faulkner lease and equipment for $932.-50; on the B. S. Ayres lease and equipment for $1,-662.50; on the Will Evans lease, $635.00; and has a lien on said property, that is, the Sallie Faulkner lease, the Will Evans lease, the E. E. West lease and E. L. Ayers lease and the H. T. Motley lease, and the equipment on all of same by reason of a general order of attachment which was issued herein and levied upon said property, and said attachment and levy are hereby sustained, and that by reason thereof plaintiff has a lien upon said property and entitled to an enforcement of said lien and a sale of all, or enough, of said property to pay said debt, interest and cost, and G. W. Weaver, master commissioner of Allen county, is hereby directed to sell all, or enough of said property to pay said debt, interest and cost, etc.   .   .   .

"It is the further judgment of the court that the mortgage on the E. L. Ayers lease, which is claimed by Geo. E. McKennon, trustee, was executed during the life of the contract between the Kosciuszko Oil & Gas Company and the Scottsville Oil Company, and was without legal authority at that time to make said mortgage, and it is the further judgment of the court that said mortgage was without consideration in that it was mortgaged to Geo. E. McKennon, trustee, for him to pay certain debts, and the records do not show that he ever paid these debts, and that the debts sued on herein had matured at the time said mortgage was executed and that same was for the purpose of preferring certain creditors and to protect especially the officers of the Scottsville Oil Company who were bound on some of the paper of the Scottsville Oil Company, and that said mortgage is subsequent to the claim of the plaintiffs herein, that is, their claim is prior to any lien which said mortgage might create and that the same is void as far as the claim sued on herein is concerned."

The appellant corporations complain first, that their property is not subject to attachment for the debts of the Kosciuszko Oil & Gas Company; second, that the lien of the appellees for this drilling is limited to the amount that the drilling done on each particular lease enhanced the value of that lease. The appellant, McKennon, complains because the court adjudged the lien of appellees superior to the lien of the mortgage to him as trustee. There is one complete answer to all of these complaints. The lower court found it and adjudged that these parties were estopped, as quoted above, and as the Scottsville Oil Company could pass no greater rights in this property to its mortgagee than it possessed itself, it follows that appellant McKennon's equities in the property of the Scottsville Oil Company are inferior to the equities of appellees.

These Kentucky corporations represented to appellees that they had sold their holdings to the Kosciuszko Oil & Gas Company and allowed the Kosciuszko Oil & Gas Company to hold itself out as the owner of these properties, and these Kentucky corporations and those who claim under them are now estopped to deny that the Kosciuszko Oil & Gas Company is the owner of these properties. The rule of equitable estoppel is, that where one by his acts, declarations, or silence where it is his duty to speak, has induced another, in reliance on such acts, declarations, or silence, to enter into a transaction, he shall not, to the prejudice of the person misled, impeach the transaction. Miles v. Lefi, 60 Ia. 168, 14 N. W. 233; Stowe v. U. S., 19 Wall. (U. S.) 13, 22 L. Ed. 144; Given v. Printing Co., 114 Fed. 92, 52 C. C. A. 40.

"Where the owner of property permits another to appear as such, he will be estopped to deny such ownership against one who, relying on his silence, acquired an interest in the property." Wilson v. Scott, 13 Ky. Law. Rep. 926.

"A railroad company issued bills of lading for grain shipped to the order of the shipper, per advice of M. B. & Co. The bills were duly indorsed, and by M. B. & Co. delivered to a bank as collateral. The bank was in the habit of allowing M. B. & Co. to withdraw such bills from time to time, and they got possession of these bills and obtained the grain from the railroad company on presentation thereof. Failing to pay their note when due, the bank sued them, and sought to recover from the railroad company the value of the grain, claiming that the property passed

to it by delivery of the bills of lading as security. Held, that the bank, by allowing M. B. & Co. to get possession of the bills and present them properly endorsed to the railroad company, was estopped to deny the legality of the delivery.'' Douglas v. Peoples' Bank, 86 Ky. 176, 5 S. W. 420.

''Where one of the beneficiaries in a note, made payable to one as 'trustee' indorsed such note .in blank with the trustee, he will be estopped to afterwards deny the title of a purchaser for value.'' Prather v. Weissiger, 73 Ky. (10 Bush) 117.

''To constitute an estoppel as against one claiming the ownership of mortgaged property, it was not necessary that he should have purposely misled the mortgagee or the public, or that he should have allowed the mortgagor to hold and claim the property for the purpose of deceiving the mortgagee or the public. If he allowed the mortgagor to hold possession and control and publicly claim the property as his own, and the mortgagor, while so in possession and claiming it, mortgaged it for a valuable consideration to one who in good faith believes from the possession and acts and declarations of ownership that he was the owner, the estoppel arises.'' Wilson v. Scott, 11 Ky. L. R. 370.

''Whenever one of two innocent persons must suffer by the wrongful act of a third, he must bear the loss, who enabled the other party to cause it.'' Nobel v. Moses, 74 Ala. 604.

''Where one of two persons must suffer by the act of a third, the one who enabled the third person to occasion the loss must sustain it.'' Stark v. Petty Bros., 195 Ky. 445.

Appellants insist that by section 2464 of the Kentucky Statutes the liens of appellees on each lease should be limited to the enhancement of the value thereof that resulted from the drilling thereon done by appellees. Having allowed the Kosciuszko Oil & Gas Company to hold itself out as the owner of the property, having put it in possession thereof, and having held out to the plaintiffs that they had sold their property to the Kosciuszko Oil & Gas Company, the Kentucky corporations are now estopped to claim that this property was sold by executory contract.

They said and allowed the Kosciuszko Oil & Gas Company to say that these leases had been ''sold'' to the Koscuiszko Oil & Gas Company; they put it in posses-

sion; they are, therefore, bound by the usual and ordinary meaning of the word "sold," and that would mean sold by a deed of general warranty. Whitworth v. Pool, 29 R. 1104. That these leases were sold to the Kosciuszko Oil & Gas Company by executory contract only, was a matter which appellants concealed and allowed the Kosciuszko Oil & Gas Company to conceal from appellees. Appellants must, therefore, suffer the consequences.

In the case of Stark v. Petty Brothers, 195 Ky. 445 (a case very similar to this one), a like ruling was made relative to the subject of estoppel, but in that case it was erroneously held that Petty Brothers only had a lien on the leased property to the extent that the work done had enhanced the value of the premises, and the construction of section 2464 made in that case should not be followed in the case of executory contracts where the vendor is estopped as in this case, since it is quite clear that the provisions of that section were intended to protect an innocent vendor in an executory contract from liens created by the vendee in possession without the knowledge or consent of the vendor; and for failure to recognize such distinction, we deem the holding in the Stark opinion is unsound on the point mentioned.

The decisive facts on the question of estoppel were identical in the Stark case with those relating to the same question in this one, and believing the opinion to be sound in that respect it is decisive of the estoppel plea herein. We think, however, that the opinion in that case, in so far as it held that the provisions of section 2464 of the statutes limited the right of the lienholder to only the enhanced value of the improved property cannot be sustained. That section says: "If the owner claims by executory contract, and if, for any cause, such contract shall be rescinded or set aside, the lien aforesaid shall follow the property into the hands of the person to whom the same may come, or with whom it may remain by reason of such rescission, to the extent that only the actual value of the property may be enhanced by the improvements so placed upon it." Evidently, it contemplates an improvement by a vendee under an executory contract of sale without the knowledge, consent or approval of the vendor; in such a case, the legislature was no doubt of the opinion that the vendor should not be burdened with the contract price for the improvement without a corresponding enhancement of the value of the property, which never became that of the vendee because of a failure to carry out the contract. Not so, however, with a vendor

who became linked to the contract for the improvement by his conduct to such an extent as created an estoppel against him from asserting that the contract was executory. Indeed, the very philosophy of an estoppel is to create an obligation against the one estopped, notwithstanding his protestations to the contrary, and when a contract is so created it is followed by all the consequences of one actually and voluntarily entered into. We, therefore, conclude that the limiting effect as to the extent of the lien applied in the Stark case should no longer be followed, and to that extent that opinion is overruled.

The judgment is affirmed.