## Wakenva Coal Company, Incorporated, et al. v. Johnson et al.

(Decided May 30, 1930.)

FAULKNER & FAULKNER for appellants Wakenva Coal Company, Inc., Amalgamated Coal Corporation, J. C. Jennings and S. R. Jennings.

J. W. CRAFT for appellants A. H. Hargis and Bank of Commerce.

WOOTTON & WOOTON for appellant Hazard Board of Education.

F. J. EVERSOLE and JESSE MORGAN for appellees J. E. Johnson, Ada Johnson, K. F. Johnson and J. L. Johnson.

F. J. EVERSOLE, pro se.

ROY HELM for appellees Siller Morgan, Green Combs, Vesty Collins, Frank Scott, Lela Nall, Joe Combs, Mary Brown, Sherman Combs, Sally Wilder and Walter Gilford.

J. W. CRAFT for appellee Hargis Bank & Trust Company.

W. A. STANFILL for appellees James Cole, Gid Tyree, Coon Young, Carlis Perkins, Troy Couch, Albert Tyree, Henry Tyree, Bige Lewis, Robert Walters, W. S. Luttrell, Arthur Campbell, W. M. Napolis, W. H. Mosley, W. W. Roberts, Boyd Combs, Dick Morris, Sam Lundy, L. M. Malone, H. H. Felty and Troy Couch.

J. T. BOWLING for appellee Ruby Allen.

SAM WARD for appellees J. M. Hoskins, David Jonigan, H. A. Morrison and Shilo Sally.

WILSON & WILSON for appellees A. N. Hoskins and P. P. Pulliam.

P. T. WHEELER for appellee W. E. Davis.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

On June 1, 1912, J. E. Johnson, etc., the owners of a large body of valuable coal land in Perry county, executed to J. T. Moore a coal lease thereon for a term of fifty years, with the privilege of renewal for forty-nine years. The lessee agreed to pay them a royalty of 10 cents a ton on the coal taken. On December 17, 1925, this lease passed to the Wakenva Coal Company, which also owned a large number of other tracts and leases in Virginia, West Virginia, Tennessee and Kentucky. On August 29, 1927, J. E. Johnson, etc., filed an action against the Wakenva Coal Company to recover an alleged balance of about $8,000, due them on the royalty. No

answer was filed to the petition, but the defendant continued to make payments upon the royalty due. On September 15, 1928, the plaintiffs filed an amended petition, alleging that other royalties had accrued which were entirely unpaid, also alleging grounds for attachment. The attachment issued and was levied upon the Johnson leasehold and equipment, which had been operated for a number of years. On October 27, 1928, the power company quit furnishing electricity at the Johnson plant and mining there after this was suspended.

On December 22, 1928, a number of laborers filed their petition to recover sums due them for their work, and on December 24, 1928, a number of claims allowed by the Compensation Board for personal injury were asserted by petition in equity. On February 5, 1929, Johnson, etc., filed a second amended petition asserting claims accruing since the last amendment was filed, and also alleging that more coal had been gotten out than reported by the company. On February 7, 1929 the attachment in the Johnson case was sustained and a sale of the attached property was ordered, but no sale was in fact made. The company was making payments from time to time on the debt. On March 16, 1929, all of the cases above referred to were consolidated and set for trial at the April term. On May 2, 1929, there was a judgment for sale of the attached property in all three actions, but this sale was not had.

On July 26, 1929, Johnson, etc., filed their third amended petition alleging that the Wakenva Coal Company on March 5, 1929, had sold and conveyed all of its property of every description to the Amalgamated Coal Corporation without consideration, and for the sole purpose of delaying and defeating its creditors; that S. R. Jennings was the president of the Wakenva Coal Company, and organized the Amalgamated Coal Corporation for the sole purpose of having the property so conveyed to defeat the creditors of the Wakenva Coal Company and to prefer some of the creditors to others, when that company was insolvent and unable to pay its debts. He also alleged that other creditors were about to levy attachments on the property, and that, unless a receiver was appointed to take immediate possession of the property, it would be dissipated and the plaintiffs left wholly without remedy; that, if the plaintiffs were required to give notice of the application for the appointment of a receiver, the defendants would defeat the action by con-

veying the property to other creditors in satisfaction of their claims, and by allowing attachment to issue against it, and so irreparable injury would result to the plaintiffs and the other creditors in the delay in giving notice of the application for the appointment of a receiver.

The court on that day, without any notice to either coal company, appointed W. E. Davis as receiver of the Johnson plant. He qualified and went out and took possession of the property. The Amalgamated Coal Corporation did not operate the Johnson plant, but it continued to operate what is known in the record as the Blue Grass Plant, until the receiver was appointed, and took charge of the property. On August 15, 1929, upon the petition of various plaintiffs asserting labor claims, the circuit judge in vacation, and without notice to either coal company, made an order appointing Davis as receiver to take charge of other property of the two coal companies. On August 29, 1929, S. R. Jennings filed in the United States District Court his petition against the Wakenva Coal Company and the Amalgamated Coal Corporation, asking that all of their property be put in the hands of a receiver. Jennings was the president of both companies. The Wakenva Coal Company filed its answer, admitting the allegations of the petition, and the receiver was appointed. On August 31, 1929, Johnson, etc., filed their fourth amended petition, in which they set out more fully their claim and the reason for the appointment of a receiver to take charge of all the property.

On September 9, 1929, the company moved to remove the above cases to the United States District Court. The motion was overruled. On September 10, 1929, the company entered a motion to set aside the order appointing a receiver, and filed reasons therefor. The motion was set for hearing on September 14, 1929, and was overruled. After this, on October 29, 1929, the court ordered the property sold; the previous orders of sale not having been executed. The sale was made on November 25, 1929, and the property brought $14,000. The coal companies and five of their creditors filed exceptions to the sale on the ground that the judgment was premature; that the property was sacrificed; that no appraisement was made; and that the sale was not made as directed in the judgment. R. W. Dickinson offered a bid of $30,000 for the property, free of all liens. They also entered a motion on December 2, 1929, to set aside the judgment of October 29, directing the sale. All of their motions and

exceptions were overruled, and the sale was confirmed. The exceptors appeal.

The first question made on the appeal is that the order appointing the receiver without notice to the defendants was void and should be set aside. While the record shows that the order of July 26 was entered in open court, the undisputed affidavit filed on the motion to set aside the order shows that it was entered on July 26, after court hours, when no court was actually held, and without notice to the defendants in any way. In 23 R. C. L. p. 37, 38, the rule is thus stated:

"Courts of equity are averse to interference ex parte and will not ordinarily entertain an application for the appointment of a receiver except upon notice to the adverse party. Such a court has no more power than any other court to condemn a man unheard, and to dispossess him of property prima facie his, and hand over its enjoyment to another on an ex parte claim to it. It should, therefore, exercise extreme caution in the appointment of receivers on ex parte applications, and be careful that a proper case is presented before it acts; and it should not be done without notice to the party whose property is to be affected, except in cases of the greatest emergency demanding the immediate interference of the court."

"The general rule that notice must be given to the adverse party of an application for the appointment of a receiver is not inflexible, but yields to an imperative necessity for an ex parte appointment to prevent irreparable loss. Thus it has frequently been held that notice might be dispensed with in cases where it appeard that the defendant was insolvent and was disposing of his property with the intention of placing it beyond the reach of his creditors. It must, however, clearly appear that the danger is real and that the delay incident to the giving of notice will result in an irreparable injury, and the defendant should be afforded a speedy hearing on a motion to vacate the order."

This rule is peculiarly applicable to the appointment of a receiver under our Civil Code, sec. 298, for it provides: "The order of a court, or of the judge thereof, appointing or refusing to appoint a receiver, shall be deemed a final order for the purpose of an appeal to the

Court of Appeals.'' It cannot be presumed that the Legislature intended that the defendant was to appeal from an order made by the judge in vacation without notice to him. The subject was carefully considered by the superior court in Wilson v. Jonas, 8 Ky. Law Rep. 510, and these conclusions were reached:

"To authorize the appointment of a receiver without notice to the defendant, it must appear that the short delay required to give notice will result in irreparable injury to the applicant.

"An order appointing a receiver may be erroneous, but is never void, for want of notice to the defendant.''

The reason for the rule is that the receiver may be appointed without notice when necessary to prevent irreparable loss; these are questions the court must decide on the facts, and, though his decision may be erroneous, it is not void.

At the next term of the court, on the second Monday in September, the defendant moved to set aside these orders, and the case was then fully heard by the court. The facts then shown to the court warranted the appointment of a receiver, and reasonably showed danger that the property might be removed or lost. The facts were undisputed, and were the same in July and August as in September. It would have been idle then for the circuit court to have set aside his previous orders and at the same time made orders appointing the receiver again. Nothing would have been gained by this circumlocution, and no substantial injustice was done by the order of the circuit court continuing the receiver. The rule is well settled that on appeal the judgment will only be reversed when prejudicial to the substantial rights of the party complaining.

In such a case as this, where the defendant was carrying on a large business, a receiver for it should not have been appointed without notice, for thus great injustice might have been done. The facts then shown the court did not show that the company was doing anything more than it had been doing for months. Under such circumstances the court should have followed the practice in the granting of injunctions, and should have made such orders as were necessary temporarily to protect the plaintiff's rights, and should have required notice to the defendant and set the case for a hearing on an early day,

providing that the temporary order should remain in force only until the case was heard. But the hearing here on the merits followed so closely on the making of the orders, and the facts were so clearly shown then, that no substantial injustice was done by the court.

The next question made is that the judgment of October 27, for the sale of the property, was premature and unauthorized. The allegations of the amended petitions of Johnson, etc., were denied by the answer of the defendant filed on September 10, 1929, which was the second day of the first term after the petitions were filed. The case therefore did not stand for trial at that term, Civil Code, sec. 367a-5; and on motions made in the case the allegations of the amended petition could not be taken as true, Mayfield Water Co. v. Graves County B. & T. Co., 170 Ky. 56, 185 S. W. 485. There was no evidence heard. The judgment therefore cannot be sustained on the ground that the deed from the Wakenva Coal Company to the Amalgamated Coal Corporation of date March 5, 1929, was executed in view of insolvency and for the purpose of preferring some creditors to others. Much of the property that was ordered sold was first disclosed to the court by the report of the receiver, filed on the day the order of sale was made. None of the plaintiffs had asserted a lien on much of this property, and it was not disclosed by the record that the company owned the property until the receiver's report was filed.

The case did not stand for final hearing on October 27, 1929, and without proof the court was not warranted in adjudging that the deed above referred to was executed in contemplation of insolvency and to prefer some creditors to others. The defendant owned the property known as the Johnson lease, also the property known as the Blue Grass mine. It had not operated the Johnson lease since March, 1929, but had operated the Blue Grass mine until the receiver took charge. These were its only two operations. It also owned the Walker Branch Mining Company plant, but had never operated it. In addition to this, it owned the property known as the Jefferson Improvement Company land in fee. This consisted of seven tracts of about 800 acres of coal land, and in addition it owned two lots in Hazard, Ky. The last three properties were entirely distinct from the two mines which it had operated, and were held under different titles. The reasons the court assigns for the order of sale was that the mines were depreciating in value, that

the cost of keeping them by the receiver was about $800 a month, and that he had no money to meet this expense. This would authorize the court to make such orders as were necessary to protect the parties from loss for the present; but it did not warrant him at that term in entering a final judgment in the action not warranted by the pleadings; the allegations of the answer being taken as true. He could not for this reason adjudge that the deed from the Wakenva Coal Company to the Amalgamated Coal Company operated as an assignment of all its property for the benefit of its creditors or enter any judgment based on such a finding. The pleading could not be taken as true against the nonresident defendants who were only before the court by warning order. The intervening petition filed by Hoskins and Pulliam on August 24, in vacation, had not been filed by an order of court. The circuit court in his final opinion in the case said that the judgment was based upon his personal knowledge of facts. But in this court the case must be tried upon the record. The defendants had not been heard. Their property cannot be taken without hearing.

It is further insisted that $100,000 worth of land was sold for $14,000 without appraisement, and for this the sale should have been set aside. Section 2362, Kentucky Statutes, provides for the appraisement of land when sold under an order of court, and by section 2364, if the land does not bring two-thirds of its appraised value, the defendant or his representatives may redeem. The statute is peremptory, and clearly applies to the sale of the seven tracts of land owned in fee and the two lots in Hazard. Whether it applies to the Walker's Branch property and the two mines that had been actually operated depends upon whether within the meaning of the statute such property is real estate. Appellant relies on Blanton v. Kentucky Distilleries Co. (C. C.) 120 F. 318; but in that case the debtor had made a voluntary assignment, and, under the statute in force when the assignment was made, the voluntary assignee was given the power to sell the estate publicly or privately and pass the entire title. That case did not present the question whether the same result would follow where land was sold under an order of court under section 1910, Kentucky Statutes, on the ground that the conveyance was preferential. There being no proof that the conveyance here was preferential, and the case not standing for trial on this question, the judgment cannot be sustained on this

ground. In addition to this, the rights of the voluntary assignee being regulated by statute, the assignor, when he makes his deed of assignment, must take notice of the statute. The assignee is his own selection, and he may be willing to confer extraordinary powers on the person whom he thus selects. But the court finds nothing in sections 1910-1913, Kentucky Statutes, conferring on the court these powers in the case of a preferential assignment. On the contrary, section 1913 provides that the court may make such orders respecting the property as it may make concerning attached property, and, when property is sold under an attachment, it is subject to redemption under the statute. The rule is also that in cases like this the creditor, where the property does not sell for two-thirds of its value, may have the equity of redemption sold for the satisfaction of his debt. This is, in cases like this, a right of great value. The purpose of the statute is to secure the equal distribution of the assets so transferred among all the creditors of the debtor, and it contains nothing exempting judicial sales made in such cases from the operation of section 2362, Ky. Stats., which expressly includes all judicial sales of land. The well-settled rule is that the different sections of this revision must be read together and must be liberally construed to promote its purpose.

This brings us to the question whether a coal lease, such as those shown in the record, is real or personal property. While the instruments are called leases, the parties of the first part thereby grant, lease, and demise unto the party of the second part, during the term of the lease, the exclusive right to enter upon, mine, and carry away and sell all the coal lying and being upon the tract of land in question, also the right to all timber standing on the land more than sixteen inches in diameter, also the right to use, enjoy, pollute, or destroy all wells or springs on the land, also the right to hew, dig, use, and carry away building stone and other such material on the land, and a right of way through and over the property for the removal of all coal and other minerals. Some of the leases are for thirty years and some for fifty, with the privilege of renewal. It is the well-settled rule in this state that a sale of standing trees not in contemplation of their immediate removal from the land is a sale of real estate. Byassee v. Reese, 4 Metc. 372, 83 Am. Dec. 481; and Wiggins v. Jackson, 73 S. W. 779, 24 Ky. Law. Rep. 2189; Second Nat. Bank v. Rouse, 142 Ky. 612, 134

S. W. 1121. The coal in the ground is a part of the land. A grant of this coal is a grant of a part of the land when not made in contemplation of immediate severance, and must be made in writing. So it has been held that such a contract or an assignment of it is a contract for the sale of land. Beckett-Iseman, etc., Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084; Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369; Kash v. United, etc., Oil Co., 192 Ky. 422, 233 S. W. 898.

By section 2463, Kentucky Statutes, one making improvements on the land of another is given a lien. Under this statute it has been held that he who digs a well on land held under such a lease as those above is entitled to a lien on the leasehold for his pay. Stark v. Petty, 195 Ky. 445, 243 S. W. 50; Scottsville Oil Co. v. Dye, 203 Ky. 496, 262 S. W. 615. By section 499 of the Civil Code a person desiring a division of land held jointly with others may have it divided by a petition in equity. It has been held that joint owners of a mineral lease, like the above, may have a division under this statute, Union Gas Co. v. Wiedeman, 211 Ky. 382, 277 S. W. 323, and it has also been held that such leases are taxable in the county where the land lies, although the owner is a nonresident of the state; the opinion resting upon the ground that such a lease is an interest in the land. Wolfe County v. Beckett, 127 Ky. 253, 105 S. W. 447, 32 Ky. Law Rep. 167, 17 L. R. A. (N. S.) 688. While there are some expressions in other opinions that a leasehold for years is a chattel real, under section 458, Kentucky Statutes, the question presented here was not really decided in those cases, which turned finally on other facts. In United, etc., Co. v. Morton, 174 Ky. 366, 192 S. W. 79, the leases were firm assets held for firm purposes. A common-law lease for years granting only the right to use the premises carried no such rights as those here involved, and a different rule necessarily applied. Clearly a sale of all the coal in a tract of land not in contemplation of immediate severance is equally within the statute as a like sale of standing trees. After such a grant, there are two estates in the land, one the reversion held by the owner and the other the leashold held by the lessee; both are taxable. Stuart v. Com., 94 Ky. 595, 23 S. W. 367, 15 Ky. Law Rep. 513; Crain v. West, 191 Ky. 1, 229 S. W. 51; Eager v. Pollard, 194 Ky. 276, 239 S. W. 39, 43 A. L. R. 808. The action to sell either, under section 62 of the Civil Code, must be brought in

the county where land lies. Kennedy v. Hicks, 180 Ky. 563, 203 S. W. 318. The court therefore concludes that these leases were real estate, and that the land should have been appraised before the sale. In Vaughan v. Pedley, 137 Ky. 737, 126 S. W. 1093, the personalty was not an essential part of a working plant. Here the land and the personalty essential to the operation of the plant constitute a unit.

What should be appraised in the case of the mining plants is a question of some difficulty. But the court concludes that the leasehold with the personal property, such as cars, motors, etc., used with it, and without which the plant could not be operated, should be considered an entirety, and appraised and soild as a whole. Any personal property not essential to the operation of the plant or directly connected with it should be sold separately. Each of the mining plants should be appraised and sold as a whole. The land held in fee should also be appraised, and should be sold separately from the mining plants. The court may also in its discretion order all the property, or such of it as it sees proper, sold as a whole. If such a sale is made, the right of redemption will be determined by adding together the appraised value of the separate parts and taking two-thirds of it.

After ordering the sale of the property above mentioned, in six units, the judgment contained the following as to the store or commissary owned and operated by the Coal Company:

"It further appearing to the court that there is a stock of general merchandise and store and office fixtures, including adding machines, typewriters, etc., belonging to the defendants located in commissary building, and the receiver will sell these items of merchandise and fixtures separate from either unit directed to be sold, and that in selling this merchandise, fixtures, etc., the receiver may at his discretion sell same as a whole upon the same terms and conditions that he sells the other property and units hereinbefore described, or he may at his discretion sell same for cash in hand in small quantities or by piece, and if he so desires to sell same as last herein stated he may fix a different date from the date of sale hereinbefore stated to sell same, and he will fix said date not later than the general date of sale hereinbefore mentioned.

"It is further ordered by the court that after the units hereinbefore mentioned have been sold separate by units as herein directed, the receiver making said sale will offer for sale all of said property as a whole and he will approve and accept bids which amounts to the most money, sold by units or sold as a whole, but if the merchandise and fixtures hereinbefore ordered to be sold are sold separate and on a different day from the regular day of sale this property will not be offered with the other property as a whole."

The receiver did not sell the commissary before the sale of the six units or offered it for sale at that time, but subsequently advertised it for sale, and sold it at the courthouse door on January 13, 1930. The purchaser at the first sale objected to the sale, and filed exceptions to it on the ground that the commissary was included in the sale to him of the whole of the property. Appellants objected to the sale, and filed exceptions to it on the ground that the receiver was without authority to sell the commissary separately after the sale of the other property, and that the price was wholly inadequate. At the sale, the commissary and fixtures, including the books and papers of the coal company, brought $205. The receiver's report showed that the merchandise in the store was of value over $2,000, and the fixtures, furniture, etc., $1,000.

The exceptions should have been sustained. The receiver was only authorized to make a separate sale of the commissary, if he made the sale "not later than the general date of sale," and he was expressly required, if the commissary was not so sold, to "offer for sale all of said property as a whole," and to approve and accept bids which amounted to the most money sold by units or sold as a whole. The words "all of said property" necessarily include the commissary, for it is named just above; the receiver had only authority to sell the commissary separately if he sold it before "the general date of sale." The receiver did not sell the commissary at the first sale; the purchaser at that sale did not buy it. He only bought the six units then offered for sale. "All of said property" was at no time offered for sale as a whole as directed by the judgment. The judgment also contained this provision:

"That upon the acceptance by said receiver of any bid for such properties and assets, the purchaser

shall immediately deposit with said receiver the sum of 1/5 of his bid in cash or by certified check or checks upon any National or other bank in the city of Hazard, Lexington or Whitesburg, Kentucky, payable to the order of said receiver, and that no acceptance of any certified check or checks by said receiver is to be or operated as payment to said receiver for any purpose whatever, unless and until same are paid, or to lease or discharge such purchaser from the payment of the amount or amounts thereof for the purpose of which given, or from his obligation to comply with all of the terms and conditions of said sale, notwithstanding such check or checks are certified; and in case any bidder shall fail to make such payment of 1/5 herein and hereby required, upon the acceptance of his bid, and shall fail to pay to said receiver said 1/5 of the purchase price of said property in cash or by certified check or checks, as above required, and to execute and deliver to said receiver his purchase money bonds for the balance of said purchase price for the respective amounts hereinabove required, said receiver shall forthwith then and there again offer said property for sale without further notice or advertisement and free from any claim, rights and interest of any such purchaser or bidder.''

By section 696 of the Civil Code all judicial sales must be made ''upon reasonable credits to be fixed by the court, not less, however, than three months for personal, nor six months for real property.'' Under the statute the court is without power to require the purchaser to pay one-fifth of the price on the day of sale, and this would be peculiarly prejudicial in the sale of large properties like those sold here; for many persons desiring to bid might not have so large a sum of money on hand on that day, and would so be deprived of the right to bid. This may be one of the reasons why all this property sold so low. By section 1002, Kentucky Statutes, in courts of continuous session, the court may by rule require purchasers at judicial sales to deposit with the officer making the sale at the time of the sale ''a specified sum of money, sufficient to cover the expense of a resale.'' But the court here was not a court of continuous session, and the deposit was not limited to the expenses of a resale. Such provisions in

a judgment are unwarranted. Guest v. Foster, 159 Ky. 1, 166 S. W. 620; Young v. Fitch, 182 Ky. 29, 206 S. W. 29. It is reversible error to order land for sale on a credit of less than six months. Luttrell v. Wells, 97 Ky. 84, 30 S. W. 10, 16 Ky. Law Rep. 812; McKensie v. Salyer, 43 S. W. 450, 19 Ky. Law Rep. 1414. Here the cash deposit required on the day of sale was nearly $3,000, and clearly the requirement was an error prejudicial to the substantial rights of appellants.

As the property was depreciating in value while standing idle, and the expenses of maintenance were so large, the court properly ordered a sale without first determining to whom the proceeds should be paid, for this would take much time, and it was to the interest of all that the property be sold at once. The undisputed debts were so large that plainly, as the facts were then presented, a sale of all the property of the coal company was necessary.

On the return of the case to the circuit court, the order of sale and the order overruling the exceptions to the report of sale will be set aside, and, unless some cause is shown to the contrary, a judgment of sale of all property as above indicated may be entered.

A motion has been made to strike out the additional record filed by appellees, but as this transcript, in view of the conclusions reached by the court, does not affect the decision of the case, it is deemed unnecessary to determine this question. The court should fix the terms of sale and not leave these to the discretion of a commissioner. Nolan v. Nolan, 220 Ky. 613, 295 S. W. 893.

Judgment reversed, and cause remanded for further proceedings consistent herewith.

Whole court sitting.