## McClanahan, et al. v. Brown, et al.

(Decided February 17, 1914.)

Appeal from Bracken Circuit Court.

1.  Land—Sale of for Taxes—Receipt of County Clerk Not Evi-dence Sale Was Properly Made.—The receipt of a county clerk for

the amount of taxes for which land was sold by the sheriff is not
evidence that the sale was properly made.

2.  Land.—A writing which does not describe the land is ineffectual
under the statute of frauds.

3.  Land—Use of for Care of Another—Adverse Possession.—One who
enters upon the land under a contract that he is to have the use of
the land for taking care of another is not in adverse possession
so long as he holds under the contract or until he brings home
to the other party that he is no longer holding under the contract.

A. D. COLE, W. A. BYRON and W. O. BLACKERBY for appellant.

H. P. WILLIS, GEORGE B. KINNEY and M. HARGETT for appellees

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

William Brown, who died a resident of Bracken
County previous to the year 1880, owned at his death a
tract of fifty acres of land in that county   He left sur-
viving him a widow, Rebecca Brown, who died some
years later, and six children, one of whom, Patsie, died
about seven years ago.  This action was brought by Sal-
lie McClanahan and Levi Brown, two of the children,
against the other three, or the heirs of those who had
died, alleging that the tract of land was indivisible and
praying that it be sold and the proceeds divided.  The
heirs at law of John Brown, one of the sons, filed an an-
swer resisting the sale of the land on the ground that the
land was the property of John Brown.  On the hearing
of the case the circuit court dismissed the petition and
the plaintiffs appeal.

The heirs of John Brown rely on the following re-
ceipt:

"$27$\frac{.09}{100}$.  Received November 29, 1880, of John
S. Brown Twenty Seven & $\frac{.09}{100}$ Dollars (27.09-100)
amount of taxes with cost, &c., of Rebecca Brown for
years 1874, 1875 and 1876 for which a tract of land of
Rebecca Brown's was sold by sheriff of Bracken Co.
                    "GEORGE B. POAGE, Clerk,
                    "By J. A. McCANE, D. C."

No evidence of a tax sale was offered; no deed from
the sheriff had ever been made.  This paper is not suf-
ficient to show that the land had been regularly sold for

taxes. The sheriff's deed is made by statute *prima facie* evidence, but a mere receipt like this cannot be given that effect. In addition this paper only shows that Rebecca Brown's land was sold for taxes; it does not show what land was sold and at most it would only show that her title to the land was sold.

They also rely on a writing alleged to have been signed by Sara McClanahan, which is as follows:

"October 11, 1880.

"this day and date i sine Mi Rite and title on Mi Motheres estate to John S. Brown and also Mi interest in fifty acors of land and i am redy to Make the dede at eney time.

her X mark<br>"Sara McClanahan."

But there is no proof of the genuineness of the writing which is denied.

This writing if genuine would not affect any interest but Sara McClanahan's and it is ineffectual under the statute of frauds because it in no manner identifies the land. She was then a married woman and her husband did not join in it. Appellees also relied on the fact that after the year 1880 and up to his death John Brown had held the land adversely, and after his death his widow and children had so held it. His son and a son-in-law testified that he held the land during all this time as his own and adversely to all the world. On the other hand the plaintiffs proved by two witnesses that in the year 1880 and after the death of Rebecca Brown he moved upon this piece of land under a contract with the other children that he would take care of Patsie Brown who was an idiot as long as she lived. They testified that as long as she lived he was to have the use of the land free of rent for taking care of her; and that he had held the land from the year 1880 until Patsie's death under this agreement, he having died shortly after Patsie, who had lived on the land with her mother until she died; that then this arrangement was made by which John was to have the use of it for taking care of Patsie there until Patsie died, and then the land was to go to all the heirs. We do not find in the record any real contradiction of the positive testimony of these two witnesses. and this testimony would explain why John Brown paid the taxes to the clerk and never took a sheriff's deed; for under the arrangement he was to pay the taxes on

the land; he also drew $75.00 a year from the State as committee for the idiot. It is true he made a mortgage on the land in the year 1881 for $58.00, and paid this mortgage off in 1884, but he owned a one-sixth interest in the land in his own right. There is no suggestion in the record anywhere that he acquired in any other way this land. It is conceded in the record that the land belonged to his father at his death. Patsie was an idiot; another son was a lunatic; these two manifestly did not sell their interest in the land, and there is no suggestion anywhere in the record that John Brown had any right to possession of the land as his own other than as above stated. No facts are shown warranting the conclusion that John Brown in any way denied the rights of his brothers and sisters in this land or brought home to them notice of such denial. He having entered under the contract to take care of Patsie, his holding did not become adverse to his brothers and sisters unless notice of this was brought home to them. We, therefore, conclude that the circuit court erred in dismissing the petition and that on the facts shown, judgment should have been entered for a sale of the land and a division of the proceeds as prayed therein.

Judgment reversed and cause remanded for a judgment as above indicated.