## Roy v. Roy et al.

(Decided May 27, 1932.)

W. O. HAYS for appellant.
H. C. KENNEDY for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

On April 1, 1929, Fountain W. Roy, executed a deed to L. B. Roy, his son, for his home place, containing about fifty-five acres of land. The material part of the deed is in these words: "That said party of the

first part, for and in consideration of the sum of $500.00, Five Hundred Dollars, in hand paid, the receipt of which is hereby acknowledged (to secure deferred payment a lien is retained upon the property hereinafter described) do hereby sell and convey to the party of the second part, his heirs and assigns the following described property: * * * The stipulations of this deed are such that first party reserves control and benefits of this land his natural life time. Second party is to support and maintain Clemma Roy as long as she remains unmarried, should said second party fail to support the said Clemma Roy for any purpose whatsoever he shall hereby forfeit all rights given him by this deed and it shall be the right and privilege of said Clemma Roy to bargain and contract with any brother or sister to become second party to this deed instead of said L. B. Roy. If not possible to bargain and contract with a brother or sister then she shall have the right to bargain and contract with any one whom she may prefer.''

On November 18, 1930, the father having died, Clemma Roy, who was the daughter and unmarried, conveyed the property to her brother A. W. Roy. On December 12, 1930, Clemma Roy and A. W. Roy brought this action against L. B. Roy alleging that the consideration for the deed had entirely failed; that L. B. Roy had failed and refused to support Clemma Roy or to provide for her in any way and had thereby forfeited all rights under the deed. They prayed that the deed be canceled and held for naught and for possession of the property and for all proper relief. L. B. Roy filed answer denying the allegations of the petition. Proof was taken, and on final hearing the court adjudged the plaintiffs the relief sought. L. B. Roy appeals.

The facts shown by the evidence are these: Fountain W. Roy was sixty-seven years old. His wife had died some years before. He had trouble with the prostate gland for several years before his death had been in bad health. His daughter Clemma, who was thirty-five years of age, kept house for him. He had several other children who were all married and living in their own homes. About ten years before this the father had conveyed to L. B. Roy a part of his home farm and Roy was living on this about 400 yards from his father's house. His father ran a small store and was also the

postmaster at Dorena. The evidence is conflicting, but the proof for the plaintiffs showed these facts: Shortly after her father's death, in June, 1929, Clemma went to live with L. B. Roy at his house. His wife treated her unkindly and in a little less than a month she left there and went to the home of her brother Daniel Roy, at Russell Springs. She stayed there about a month and then returned to the house of L. B. Roy, as she says, hoping that things would be better. She then went back to her brother at Russell Springs and stayed there about three months. L. B. Roy came over and asked her to come back to his house and she went with him hoping that the former trouble would not be renewed. But things were as bad as ever, and after staying there about a month she left and went to her brother A. W. Roy, with whom she has since lived.

L. B. Roy had five children, the oldest of which was about thirteen years old. A. W. Roy only had one child. The proof for the plaintiff showed that L. B. Roy's wife was unwilling for her to live with them and declared that either she or Clemma had to leave, and that L. B. Roy said that Clemma must leave and not his wife. Clemma and his wife had a personal difficulty in which she says that Roy's wife struck her with a poker, but she says that Clemma was striking at her with a chair and she only defended herself. Mrs. L. B. Roy says that Clemma had fits and that in these fits one could not get along with her, and that it was not safe to leave her there with the children.

Without further elaborating the evidence, it is sufficient to say that the proof shows that Mrs. L. B. Roy did not want Clemma in the house and had the idea that it would be better for her to live with A. W. Roy as they had only one child. The condition of the bad feelings between the two women was such that Clemma could no longer remain in that home. L. B. Roy realized this and in fact said to more than one person that Clemma had to leave. While there is no proof of any mistreatment by him of his sister, there is abundant proof that his wife made things such that Clemma could not live there and that he sided with his wife and did nothing to protect his sister who, as the proof on her behalf shows, was not at fault.

These grounds are relied on for the reversal of the judgment: (1) The court erred in overruling the de-

murrer to the petition. (2) The judgment is flagrantly against the evidence.

■ It is earnestly insisted that L. B. Roy was in possession of the property and that no action would lie against him to dispossess him until a forfeiture of his interest under the deed had been first adjudged. But the purpose of the action was to obtain a judgment that L. B. Roy had failed to comply with the deed and to adjudge the possession to the person to whom Clemma Roy had transferred the property. It was not necessary for the plaintiffs to bring two actions. The entire policy of the law is to avoid multiplicity of actions and plaintiffs were entitled in one action here to obtain full relief. Davey, etc., Co. v. Ackelbein, 233 Ky. 115, 25 S. W. (2d) 62.

It is also insisted that the conveyance by Clemma Roy to A. W. Roy was champertous, inasmuch as L. B. Roy was in possession of the property and claiming under the deed. But by the very terms of the deed under which he held it was provided that he was to support and maintain Clemma Roy as long as she remained unmarried and "should he fail to support the said Clemma Roy for any purpose whatsoever he shall hereby forfeit all rights given him by this deed, and it shall be the right and privilege of said Clemma Roy to bargain and contract with any brother or sister to become second party to this deed instead of said L. B. Roy." L. B. Roy held under this deed no less than his sister, and his possession was not adverse to his sister so far as her rights were secured by the deed. When he failed to support her as required by the deed, she had the right to protect herself by a contract with another brother or sister and make such brother or sister the second party to the deed. When L. B. Roy accepted the deed, he accepted it subject to its conditions and he cannot complain that a condition provided for in the deed was exercised. 2 C. J. p. 148, sec. 261; Stevenson v. Huddleson, 13 B. Mon. 299; Kennedy v. Linn Orphan Asylum, 103 S. W. 340, 31 Ky. Law Rep. 766; McClanahan v. Brown, 157 Ky. 450, 163 S. W. 467.

■ In cases of this sort the court gives weight to the judgment of the chancellor and does not disturb his judgment on the facts unless against the evidence. For in such cases a discretion should be exercised. The chancellor has more or less knowledge of local condi-

tions and the witnesses in the case. Under this rule the judgment here cannot be disturbed, for although there is proof for the defendant that Clemma Roy had strange spells from time to time and acted unreasonably then, the court concludes from all the facts that it was simply impossible for her to live with her sister-in-law in the state of feelings then existing. It is shown by the proof that when the old man directed the draftsman of the deed to make it as it reads, the draftsman suggested to him that he had better make the deed to Clemma herself and thus provide for her. But the old man seemed to fear that in some way she might lose the property, and finally concluded to make the deed as it was written as the best way to protect her. Very evidently the protection of this unmarried daughter who had lived with him and helped to take care of him was the main purpose in the deed, and this under the evidence would be entirely defeated if the deed was suffered to remain in L. B. Roy. Appellant values the property at $1,000. Another witness values it at $800. The provision for the daughter was evidently the ruling purpose in the old man's mind when he made the deed. A. W. Roy takes the property under the provisions of the deed above quoted.

Appellant complains that he was not allowed anything for improvements on the property. He had put a roof on the house that had cost him $125, and had made some other small repairs. But he had enjoyed the rents of the property for about two years when the judgment was rendered, and the court is unable to see that the judgment of the circuit court on this subject is against the evidence.

Judgment affirmed.