## Daniels v. Daniels et al.

(Decided March 16, 1934.)

WILLIS STATON for appellant.
W. B. TAYLOR, guardian ad litem, for appellees.
L. J. MAY for appellee Eunice Daniels.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In April, 1925, the appellee Eunice Daniels was granted a divorce from G. C. Daniels, and was awarded the custody of the youngest of their three infant children, together with the sum of $25 per month for the support and maintenance of that child. In May, 1925, Daniels married the appellant, Mary C. Daniels. G. C. Daniels being delinquent in paying the alimony adjudged against him, the appellee on the 27th day of July, 1927, took a judgment against him in the sum of $375 for such unpaid alimony. An execution issued under this judgment was levied on a certain tract of land as the land of G. C. Daniels. Thereafter in August, 1928, the appellant brought this suit in the Pike circuit court to enjoin further proceedings under the execution. In her petition, the appellant asked that she be adjudged to be the owner in fee simple of the land levied on as the land of her husband, or, in the alternative, that she be adjudged to be the owner of a life estate in said land with remainder to her husband if he survive her, and remainder after the death of both of them to their children, G. C. Daniels, Jr., and James Aaron Daniels. The appellee traversed the allegations of the petition and

affirmatively alleged that the land upon which the execution had been levied had been paid for by Daniels and was owned by him when the execution was levied. These allegations were not denied by any reply. After proof had been heard, the court dismissed the appellant's petition, and from that judgment this appeal is prosecuted.

It appears that the land in question was bought from Charlie Billiter, the brother-in-law of G. C. Daniels, and the brother of his present wife, the appellant. When the land was purchased, Billiter and Daniels went to the office of Mr. Willis Staton, an attorney, and had him draw a deed, deeding the property to "Mary Daniels." Now it so happened there were two Mary Daniels, Mary C., the appellant and wife of Daniels, and Mary B., the mother of Daniels. Billiter's wife was not with him at the time the deed was drawn, and so it was given him to take to his home in the country for the purpose of having his wife sign and acknowledge it. This he did, but before he or his wife signed and acknowledged the deed, he interlined after the name of the grantee "Mary Daniels" the words "the wife of G. C. Daniels." He then mailed the deed to G. C. Daniels. Appellant contends that she furnished the money to buy this land and the deed was intended to be made to her, and that after its reception by Daniels he gave it to her and she put it in her trunk, but later discovered that it had been abstracted and had disappeared. It is the contention of the appellee that the money to buy this land was advanced by the mother of Daniels for him, and that the land was to be his but to be put in his mother's name to fend off creditors, and that, when he received the deed with the interlineation, he refused to accept it and never delivered it either to his wife or to his mother. At all events, it is conceded that, after Daniels had received this deed from Billiter, he went to Billiter, and the latter and his wife executed another deed to the same property in which Daniels himself was named as grantee. Later, and after this deed had been recorded, Daniels and his wife executed a deed to the property in question to R. B. Hammond as trustee, in which it is specifically recited that the property thereby conveyed is the same property conveyed to Daniels by the Billiter deed above mentioned. The appellant claims that she was forced into signing and acknowledging this deed through the force and duress of her husband, but

she utterly fails to substantiate such claim by her proof. The trustee immediately reconveyed the property to Daniels and the appellant as tenants in common for life with remainder for life to the survivor, with remainder in fee at the death of the survivor to their two infants above mentioned.

There is ample proof to sustain the contention of the appellee that Daniels was the real purchaser of this property, that his mother advanced him the money, and that the deed to Mary Daniels was intended as a deed to the mother; the property being intended to be put in her name as a concealed trustee for her son. The evidence discloses that Daniels was resorting to every hook and crook possible in order to defeat the appellee in the collection of her alimony. The execution of the second deed by Billiter and the recital in the deed of Daniels and the appellant to the trustee to the effect that this land was owned by Daniels under the second Billiter deed strongly corroborates the appellee's contention. It is true the appellant produced evidence to sustain her claim that it was her money which bought this land and that the first Billiter deed was intended to convey the land to her and that the deed had been delivered to her and was later stolen. But the chancellor chose to believe the evidence for the appellee to the effect that the deed as originally executed by Billiter was never delivered to the appellant, but was canceled and destroyed because it did not convey the property to the real person in interest and as had been agreed upon. Even if the appellate mind were left in doubt as to which set of witnesses are to be believed, under familiar law it would be our duty in this equity case to follow the finding of the chancellor as to the facts, which is that at the time this execution was levied the land was that of Daniels.

The judgment dismissing appellant's petition is therefore affirmed.