# Cavalier Advertising Service, Inc., v. Hudson et al.

(Decided Dec. 3, 1935.)

STRATTON & STEPHENSON for appellant.

HENRY J. SCOTT for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

In August, 1925, C. G. Evans and Stoney Amick purchased a number of billboards from L. B. Coleman and conducted an outdoor poster advertising business under a partnership then or theretofore formed. As business demands increased, other billboards were erected in Pike and Floyd and possibly in other counties. In 1927, a corporation known as the Evans-Amick Poster Advertising Company was formed by Stoney Amick, C. G. Evans, and Mrs. C. G. Evans with a capital of $6,000 divided into 60 shares at a par value of $100 each. Stoney Amick was the owner of 15 shares and Mr. and Mrs. Evans together owned 15 shares, the remainder was for a time held as a treasury stock. By amendment of the articles of incorporation, the name of the corporation was later changed to the Evans-Amick-Hudson Advertising Company, and in the same manner it was still later changed to the Cavalier Advertising Service, Inc.

On May 18, 1928, the corporation entered into a contract with C. P. Hudson wherein it was recited that he would subscribe for 20 shares of the capital stock of the corporation for which he was to erect and turn over to the company 40 billboards according to standards prescribed in the agreement, and that when completed and delivered to the corporation, 20 shares of the stock was to be issued to him. It was further provided that when the billboards were completed and delivered C. P. Hudson was to become general manager of the corporation at a salary of $250 a month and the necessary expenses incident to the business until the advertising panels exceeded 200 in number when a new salary was to be agreed upon. Under the terms of the agreement, C. P. Hudson was to lend or secure a loan for the corporation in the sum of $6,400 or such part thereof as might be needed to erect 80 billboards which

the corporation agreed to repay with interest. At a meeting held on September 1, 1928, 20 shares of stock were issued to C. P. Hudson in exchange for 40 billboards which had been erected by him pursuant to the contract theretofore entered into and he was elected a director to fill out the unexpired term of Mrs. Evans who resigned. He was also elected treasurer of the corporation to fill out the unexpired term of Stoney Amick who resigned.

At a meeting of the directors held on September 11, 1930, the following loans to the corporation were approved, Stoney Amick, $1,000, First National Bank of Pikeville, $1,000, and Mrs. C. P. Hudson, $6,400. It was further provided by motion which was seconded and carried that life insurance policies on the lives of Stoney Amick and C. P. Hudson to protect the loans be approved. Upon further motion and second which carried, the salary of C. P. Hudson was raised to $300 per month effective August 1, 1930.

In December, 1932, Stoney Amick died intestate and on October 6, 1933, Mamie Amick, as his administratrix, instituted this action against the Cavalier Advertising Service, C. P. Hudson, C. G. Evans, and Mrs. C. G. Evans. In her petition, and in answer and amended answers of the corporation and Mr. and Mrs. Evans to the answer, counterclaim and cross-petition of C. P. Hudson, she alleged in substance that the corporation was not properly officered; that C. P. Hudson had collected and not accounted for funds of the corporation and had neglected and mismanaged its affairs, and sought recovery from him for $4,100 for billboards carried away, lost, destroyed, or damaged because of neglect, and inattention to the business; $1,-181.45 paid out of the funds of the corporation on a $10,000 insurance policy on his life in which his wife was designated as beneficiary; $2,150 alleged to have been paid as an unlawful increase of his salary; $4,-325.53 paid for mileage on Hudson's automobile at the rate of 10 cents per mile; and some miscellaneous items improperly charged as expenses. It was also alleged that from and after August 1, 1932, and including the greater portion of 1933, C. P. Hudson was physically unable to perform the duties of general manager of the corporation, and that during such time the duties were wholly neglected or performed by others,

and by reason thereof he should not be permitted to receive or recover any salary during such period.

By answer, counterclaim, and cross-petition, C. P. Hudson traversed the allegations of the petition and sought to recover $3,439.02 back salary, and by an intervening petition Mrs. C. P. Hudson sought to recover on a note for $2,875 dated June 1, 1930, due 90 days after date and bearing interest from maturity subject to a credit of interest to December 30, 1931, and the further sums of $150 and $100 paid on December 1, 1930, and July 1, 1931, respectively.

In addition to a plea of no consideration, plaintiffs alleged that Mrs. Hudson's note should be credited by amounts set out in their pleading and which the records show had been paid to her. They asked for an accounting and for the appointment of a receiver to take charge of the business, and defendants asked for a sale of the property of the corporation to satisfy their demands and later made a motion for the appointment of a receiver. By amended petition, plaintiff withdrew so much of the original petition as sought a sale of the property and the close of the business. By reply, C. P. Hudson traversed the allegations of the answer to his cross petition. The cause was referred to the master commissioner and later he was appointed receiver for the corporation. This action was consolidated with an action previously instituted by the First National Bank of Pikeville seeking to recover from the corporation a balance of $517.33 on a note which was secured by a mortgage on certain billboards described in the petition and mortgage and asking for a sale of the mortgaged property to satisfy its claim.

The commissioner filed a report, and from the evidence heard by him found the assets of the corporation to be $6,621.53 and the liabilities, including the notes of the bank and Mrs. Hudson and a salary account of $1,757.45 due C. P. Hudson, to be $4,757.46; that the bank had priority as to the billboards covered by its mortgage; that C. P. Hudson's salary account should be allowed as priority claim No. 2, but inferior to the claim of the bank on the mortgaged property, and that Sarah Hudson had a third lien. He further reported at the rate of $300 per month $3,439 would be due C. P. Hudson on salary account, but during the time he was acting as general manager he was ill for five

months during which time Mrs. Amick and Mrs. Hudson were doing work for him. He recommended that for this time the salary be reduced $100 per month or a total of $500. He further found that $1,181.45 had been paid by Hudson out of the corporation funds as premiums on a life insurance policy in which his wife was beneficiary and that this sum should be deducted from his salary account. He found that plaintiff's claim that Mrs. Hudson's note was not bona fide and without consideration was without merit. He further stated that from his conduct of the business, since it had been placed in his hands as a receiver, and from the evidence C. P. Hudson had exercised ordinary diligence in the management of the corporation's affairs.

Plaintiffs filed exceptions to practically every item in the commissioner's report and C. P. Hudson excepted to so much of the report as deducted various items from his salary account; and Mrs. Hudson excepted to so much of the report as did not give her claim equal rank with that of the First National Bank of Pikeville except as to the mortgaged property.

On final hearing it was adjudged that plaintiffs' exceptions to so much of the commissioner's report as found that the corporation was indebted to C. P. Hudson in the sum of $1,757.45 be sustained and that the claim be disallowed, but in all other respects the exceptions be overruled; that Sarah Hudson recover of the corporation the sum of $2,500 with interest from January 1, 1932, and her costs, and that the First National Bank recover on its note the sum of $500 with interest from February 1, 1932; that the cross-petition of C. P. Hudson be dismissed and the counterclaim and amended counterclaim of plaintiffs against C. P. Hudson and the intervening petitioner, Sarah Hudson, be dismissed; that the property and assets of the corporaation be sold, and, after payment of the audit and costs of the actions, the remainder should be divided between the stockholders according to their respective interests.

Plaintiffs are appealing, and upon a motion C. P. Hudson has been granted and prosecuting a cross-appeal.

The numerous grounds relied on by counsel for appellant for reversal will be taken up in the order in which they were discussed in the brief.

It is first argued that the court improperly permitted Sarah Hudson to file her intervening petition and should have sustained appellant's motion to strike it or should have sustained the special demurrer thereto. Since the original petition sought a sale of the assets of the corporation and a settlement of all of its business and affairs, it is apparent that the court did not err in permitting the pleading in question to be filed. In any event, under later developments of the case, Mrs. Hudson did become a necessary and proper party and entitled to plead. Unquestionably, therefore, plaintiffs' rights were not prejudiced by the filing of this pleading even though it may have been premature.

Further argument is made that the note of Mrs. Hudson was without consideration, but that if the court should conclude otherwise, it should be credited with sums aggregating $2,220.08 with interest from the date of such credit as shown by corporation records. It is not claimed that the amount of this note, in addition to other indebtedness, exceeded the amount which by charter the corporation was authorized to incur. The minutes of the meetings of the board of directors gave authority to the general manager to borrow the money and the note was signed by C. G. Evans, president, and attested by Stoney Amick as secretary of the corporation. Mr. and Mrs. Hudson testified that she at one time held the corporation's notes for $4,000 for sums which she had advanced at various times to it. The records of the corporation disclosing money advanced by Mrs. Hudson to the corporation and that other evidence coupled with the fact that Evans and Amick, as directors and stockholders of the corporation, executed the note, fully sustains the finding of the commissioner with regard to it. Concerning appellant's claim that sums paid to Mrs. Hudson aggregating $2,220.80, as shown by ledger sheets of the corporation, should be credited on the note, it may be said that the evidence tends to show that these amounts went to reduce an original and larger note and possibly other sums which had been advanced by her to the corporation.

It is next urged that the court was without authority in the state of the pleadings and upon motion of C. P. Hudson and wife to appoint a receiver. In making this

contention, counsel cite and rely on sections 298 and 299 of the Civil Code of Practice and certain cases from this jurisdiction.

In Fletcher's Cyc. on Corporations, it is indicated that statutes authorizing the appointment of receivers are generally held to be a recognition rather than a limitation on the customary equity jurisdiction in such matters. It is unnecessary to determine whether the chancellor abused his discretion in the matter in appointing a receiver at the time he did, since under the facts later developed and fully disclosed by the record it is clearly made to appear that the appointment of a receiver was proper and as said in Wakenva Coal Co. v. Johnson, 234 Ky. 558, 28 S. W. (2d) 737, 742, "It would have been idle then for the circuit court to have set aside his previous orders and at the same time made orders appointing the receiver again. Nothing would have been gained by this circumlocution, and no substantial injustice was done by the order of the circuit court continuing the receiver."

It is also argued that the court erred in failing to render judgment against C. P. Hudson for $4,100 for the loss of 39 billboards and the destruction and damage to other billboards alleged to have been caused by his negligence and inattention to duties. The evidence shows that some of the billboards were washed away by unusual floods, some destroyed by fire, and some were stolen and carried away. The evidence also shows that because of the large surface exposed to the pressure of the winds, many of the boards would be blown down by high winds and storms, especially when the ground had been softened by rains or thaws and the posts and anchors rendered less secure. The evidence also shows that Mr. Hudson instituted prosecutions against some persons alleged to have carried away billboards and that he and his employees made investigations and searched for billboards which had been lost. At least some of the billboards which had fallen were stored in buildings. On the whole, it cannot be said that the commissioner's finding in this matter was not in accord with the weight of the evidence.

Appellants' contention that the court erred in failing to render judgment on the counterclaim for the sum of $3,050, excess salary claimed by Mr. Hudson from August, 1930, to December, 1933, is wanting in merit.

Appellant pleaded and offered evidence to the effect that when Mr. Hudson requested that his salary be raised from $250 to $300, he indicated that if the request was not granted he would cause his wife to institute proceedings to collect her note and to sell the property of the corporation to satisfy her debt, and that thereafter, when a proposition to reduce his salary would come up, he would renew these threats. When Mr. Amick and Mr. Evans assumed the office of directors of the corporation, the law, as well as the interest of the corporation, imposed upon them the duty to give conscientious consideration to every proposition which involved its rights and interests, and to safeguard its welfare. It is not to be believed that they participated in an unwarranted or unlawful increase in salary because of threats to collect a note which, they now claim, was without consideration. The evidence to sustain their claim in avoidance of the note is completely overborne by the records and their previous acts and conduct.

It is next urged that the court committed error in refusing to adjudge against C. P. Hudson the sums paid on his insurance policy out of the funds of the corporation, and this may be discussed in connection with the further contention that the court erred in refusing to adjudge against him the aggregate sum of $4,325.53, which he charged for the use of his automobile at the rate of 10 cents per mile while looking after the affairs of the company. The commissioner found that at the rate of $300 per month, $3,439 would be due C. P. Hudson as salary, but he further found that there should be deducted from this sums paid as premiums on a life insurance policy and $500 by way of reduction of salary for five months while C. P. Hudson was ill, leaving a balance of $1,757.45. The chancellor dismissed Hudson's cross-petition and allowed him no salary whatever, but it does not appear in the judgment or elsewhere in the record why this was done. Unquestionably, the commissioner was correct in not allowing the amount paid as premiums on the life insurance policy, and it is further apparent that the charge of 10 cents per mile for the use of Mr. Hudson's automobile was excessive especially in view of the fact that he charged against the corporation gasoline, oil, etc., used in the operation of his automobile. Since this mileage charge was not separated from other items of expense, it is

difficult to determine the amount of it. On the whole, the finding of the chancellor in this respect was as favorable to appellants as the evidence would warrant.

Finally it is argued that the court erred in refusing to require appellee's personal bank account to be filed in evidence and in refusing to have the books of the corporation audited. The commissioner reported that Mr. Hudson produced all books and records in his possession, but that the records for some of the years were missing. The evidence shows that the corporation had maintained offices in a bank building, but that the furniture in the office belonged to a party not connected with the corporation and who resided elsewhere. The corporation ceased to use this office and the desks and some of the furniture containing some of its records were removed by the owner and the records could not be found or produced at the time of the trial. It is apparent that all facts have been developed that could have been by the records and that an audit would have served no good purpose, but would have entailed unnecessary and additional expense. In the circumstances, it is manifest that the court did not commit reversible error in not requiring the personal and private accounts of appellees to be produced.

When we come to a consideration of the cross-appeal, it is apparent that C. P. Hudson should be charged with the sums paid as premiums on his life insurance policy out of funds of the corporation; and while under the terms of his employment he was entitled to his actual and necessary expenses incurred in the prosecution of his duties, the amount charged against the corporation for the use of his automobile was unreasonable and excessive. It is undisputed that Mr. Hudson was because of illness unable to give any attention to his duties as general manager for several months, but there is a dispute concerning the duration of such disability. In the proven circumstances it is inequitable for him to exact or to be paid full salary during the long period in which he rendered no services. Taking into consideration these items warranting a deduction from the amount claimed on account of unpaid salary, it cannot be said that the chancellor's finding with respect to C. P. Hudson's claim is not supported by the evidence.

The ground upon which the chancellor's opinion may have rested is immaterial, since it should and will be upheld if correct upon any ground manifested by the record. Dwiggins v. Howard, 247 Ky. 746, 57 S. W. (2d) 649; Whitaker v. Reynolds, 234 Ky. 127, 27 S. W. (2d) 672.

The chancellor's finding on conflicting evidence will not be disturbed on appeal unless clearly against the weight of the evidence, McIntosh v. Turner, 239 Ky. 495, 39 S. W. (2d) 966; Brewer's Ex'r v. Smith, 242 Ky. 175, 45 S. W. (2d) 1036; Roy v. Roy, 246 Ky. 36, 54 S. W. (2d) 362; nor where on all the evidence the mind is left in doubt regarding the truth, Flanagan's Adm'x v. May, 234 Ky. 653, 28 S. W. (2d) 971; Henson v. Jones, 247 Ky. 465, 57 S. W. (2d) 498; Daniels v. Daniels, 253 Ky. 437, 69 S. W. (2d) 720.

Governed by the foregoing, it is obvious that the judgment should be and is affirmed on both original and cross-appeals.